**In the Matter of BAHIA RESORTS, INC., Debtor.**

**Bankruptcy No. 84–276.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 3, 1985.

Preston Cockey, Jr., John H. Rains, Tampa, Fla., for Causeway Inn South, Inc.

Domenic Massari, Tampa, Fla., for debtor.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case. The immediate matter under consideration is a Motion for Relief from Automatic Stay filed by Causeway Inn South, Inc., (Landlord) who seeks the entry of an order lifting the stay in order to permit the Landlord to proceed with a state court eviction action against Bahia Resort, Inc.,

(Debtor). The eviction action was commenced in the Thirteenth Judicial Circuit in and for Hillsborough County on November 23, 1983, (*Causeway Inn South, Inc. v. Bahia Resorts, Inc.* Case No. 83–16424–CC, Division B).

The facts relevant to the resolution of the matter under consideration as developed at the final evidentiary hearing can be summarized as follows:

The Debtor operates a hotel owned by the Landlord located on the Courtney Campbell Causeway in Tampa, Florida. Allan Clark, the president and principal shareholder of the Debtor, was originally an employee of the Landlord and in that capacity managed one of two hotels owned by the Landlord. It appears that in October 1978, Frank Bartke, the President and sole stockholder of the Landlord sought to divest the corporation of its hotel operation. In order to accomplish this, he transferred the full operational control and responsibility for one of the hotels to the Debtor Corporation under a lease arrangement which contemplated the purchase of the hotel facility by the Debtor. In early 1979, Frank Bartke and Allan Clark agreed to enter into a lease with an option to purchase although a written lease was not executed until April 27, 1979 (Movant's Exh. No. 6).

The written lease, which is dated March 1, 1979 provides, in part, for a basic monthly rent of $10,000. payable on the first of each month; a security deposit of $95,000. "... as security for the performance by the Lessee of the terms of the lease;" cost of living increases beginning March 1, 1983 and the payment of all taxes by the lessee (although there exists a dispute as to the cost of living and taxation provisions of the lease). The lease also contains an option to purchase (Movant's Exh. No. 4). Based on the Debtor's alleged failure to timely pay base rent, to pay the proper amount due under the cost of living provision (as calculated by the Landlord) and to escrow taxes, the Landlord, on November 3, 1983, declared the lease to be in default and, on November 15, 1983, notified the lessee that the lease was terminated.

There is no doubt that prior to August 1, 1983, the Landlord accepted the base rental payments *after* the first of the month despite the payment terms set forth in the written lease. However, it is the Debtor's contention that the original parties to the contract, that is, Frank Bartke on behalf of the Landlord and Allan Clark on behalf of the Debtor, orally agreed that the actual payment date was to be on the fifth of each month. Further, the Debtor contends that the written lease was hastily drafted and executed only because Frank Bartke became seriously ill; that the lease fails to accurately reflect the actual agreement of the parties; that Frank Bartke died a few months after the lease was executed; that despite the terms of the written lease, the Debtor and the Landlord, which after the death of Frank Bartke was "Bartke Trust", continued to observe the informal arrangements made prior to the execution of the written lease; and, that the lease, as written, was never intended as the final agreement between the parties.

On August 5, 1983 Counsel for the Landlord sent a certified letter to Counsel for the Debtor with a certified copy to Allan Clark. The letter dealt generally with the Debtor's failure to pay August rent and other amounts allegedly due under the lease. For purposes of this controversy, the pertinent portion of the August 5 communication reads as follows:

"1. All rent payments must be made *on timely basis and any future late payments will be dealt with in accordance with the terms of the lease* (emphasis supplied).

2. Payment within five days of this notice shall be made of the sum of $18,500 as outlined above in this letter.

3. Payment within five days of this notice shall be made of August rent in the amount of $13,700.

Unless payments of such sums are made within five days of this letter, the Trustees will take appropriate action as

outlined in the lease. (Movant's Exh. No. 3).

It appears that the Debtor did not make the monthly rental payments for the months of August, September and October, 1983, however, it is admitted that the Landlord accepted payments from a third party which were made on behalf of the Debtor. (Movant's Exh. No. 13).

· On October 14, 1983 Counsel for the Landlord sent a letter to Allan Clark which stated that although the Landlord had presented a lease modification agreement to Clark; and that Clark and the landlord had engaged in conversations regarding an offer to purchase the hotel, it is the Landlord's opinion that Clark had failed to timely contact the Landlord regarding either proposal. Thus, Counsel informed Clark that the Landlord interpreted Clark's failure to act as a rejection of any modification. In addition, the letter acknowledged the acceptance by the Landlord of the base rental payments made by a third party on behalf of the Debtor for the months of August, September and October, however, the letter included the following language.

... The Trustees in their continuing effort to work with you will accept this payment; however, the amounts to be withheld will be accepted only as partial payment of amounts which are currently outstanding and in accepting such partial payment, Causeway Inn South and The Trustees hereby reserve all rights against Bahia and such acceptance shall not serve as a waiver of any rights of the lessor under the lease.

The letter then set forth the additional sums deemed to be due and owing, demanded that the amount be brought current within ten (10) days of the date of the letter, and stated that,

"... the Trustees are formally advising you they expect strict compliance with the terms of the lease." (Movant's Exh. No. 12).

On October 26, 1983 Counsel for the Debtor responded to the October 14 letter referred to above, outlined his understanding of the differing positions of the parties regarding certain provisions of the written lease, i.e., the cost of living index and payment of taxes, and suggested a meeting between the trustees and Allan Clark to resolve the disagreements. (Movant's Exh. No. 4).

On November 1, 1983 the Debtor did not timely tender the rent payment as called for in the written lease and on November 3, 1983, Counsel for the Landlord sent another certified letter to Allan Clark which provides as follows: (Movant's Exh. No. 5)

This letter shall serve as formal notice to you and Bahia Resorts, Inc. for the following:

(1) Bahia Resorts, Inc. is in default of the terms of the lease between Bahia Resorts, Inc. and Causeway Inn South, Inc. for failure to pay rent for November, 1983 in the amount of $13,694.54

(2) The corporation is in default of the terms of the lease for failure to escrow property taxes (for the hotel property) in excess of $25,000 for the months January through November.

(3) The terms of the lease provide the cost of living adjustment would be put into effect March 1983. A computation of such amount equals 3,694.54 per month. Thus far, $19,688 of such increase had been paid, leaving $9,868.32 still due for the period March through October ...

Unless payment of all such sums due is made within ten days of this letter, we have been instructed by the Trustees to take all appropriate action under the lease. (Movant's Exh. No. 5).

On November 15, 1983, the Landlord, by certified letter, advised the Debtor that the lease remained in default despite earlier demand for payment, that the Debtor's right of possession had expired and that the lease was declared terminated. (Movant's Exh. No. 7).

On November 23, 1983 the Landlord filed an eviction action in the County Court for the Thirteenth Judicial Circuit in and for Hillsborough County. (*Causeway Inn South, Inc. v. Bahia Resorts, Inc.* Case

No. 83–16424–CC, Division B). The matter was scheduled for trial on February 7, 1984 and on February 6, 1984, the Debtor filed its Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code.

It is the Debtor's position that the lease agreement was not effectively terminated prepetition because: 1) the Debtor had not committed an effective event of default on November 3, 1983; 2) the Debtor tendered payment of the November rent which tender was accepted by George Bartke; 3) the security deposit was to be applied to defaults; and 4) the "Default" and "Termination" Notices were improper, premature and ineffective. Thus, the Debtor contends that the lease remains intact and that the Debtor has demonstrated an ability to meet the requirements of § 365(d)(2) of the Bankruptcy Code and thereby assume the allegedly unexpired lease.

■ Considering the Debtor's contentions, seriatim, the Court is satisfied that each is without merit and must be rejected. First, the Court is satisfied that the Debtor's failure to tender the rent payment on November 1, 1983 constituted an event of default under the lease. While there is no dispute that until August, 1983, the rent was accepted as a matter of course, *after* the first of the month, the record is equally clear that on October 14, 1983 the Debtor was notified that the Trustees of the Bartke Trust (which owns the Landlord Corporation) expect *"strict compliance with the terms of the lease"*. (Movant's Exh. No. 12) In addition, Section 19.05 of the lease agreement provides as follows:

> No failure by Lessor or by Lessee to insist upon strict performance of any term, covenant, agreement, provision, condition or limitation of this lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance by the Lessor of full or partial rent during the continuance of such breach shall constitute a waiver of any such breach of such term ..."

(Movant's Exh. No. 6). Of course, Florida recognizes and enforces express non-waiver clauses. *See Philpot v. Bouchelle*, 411 So.2d 1341 (Fla. 1st DCA 1982); *In re DeMeo*, 31 B.R. 905 (Bankr.S.D.Fla.1983).

[2] The Debtor's second assertion is that Allan Clark, on behalf of the Debtor, tendered payment of the November rent to George Bartke which tender was accepted. It appears that Clark advised George Bartke by telephone, since Bartke was in New York, to apply a check issued in August 1983, which had earlier been dishonored by the Bank, to the November rent. The Court is satisfied that this was simply not a proper tender. Any alleged authorization by Clark to submit a previously dishonored two-three month old check to the bank falls short of a proper tender to cure the defaults set forth in the November 3 default letter.

■ Likewise, the Court rejects the Debtor's argument that by oral agreement the security deposit was to be exhausted and applied to rent payments prior to the Landlord being able to terminate the lease, even though the lease provided to the contrary. Of course, the Debtor maintains that the executed lease in no way represents the actual agreement by the parties, but rather was a document which was executed in haste and was modified both orally and by a course of conduct over a period of years. As noted earlier, there were admittedly practices established between the Landlord and the Debtor which did not strictly adhere to the express terms of the lease. However, this Court is satisfied that the Debtor was adequately notified of the Landlord's expectation of strict compliance with the terms of the lease in the future. In addition, the lease contains an express non-waiver clause. Finally, the alleged oral modifications are in direct contravention with the express terms of the lease and the Debtor has failed to establish to the Court's satisfaction that the original parties to the written lease executed the same with the knowledge and intention that the written instrument did not and was not intended to reflect their agreement.

Finally, the Debtor contends that the "default" and "termination" notices were

improper, premature and ineffective because the Landlord did not strictly comply with Florida Statutes §§ 83.05 and 83.20(2) by demanding either payment of the arrearages or possession of the premises. Article 19 of the Lease Agreement (Movant's Exh. No. 6) provides in pertinent part:

Section 19.01  If any one or more of the following events (in this Lease sometimes called "Events of Default") shall happen:

(a) xxx

(b) If default shall be made in the due and punctual payment of any basic annual rent or additional annual rent payable under this Lease or any part thereof when and as the same shall become due and payable; or if default shall be made in the payment of any taxes or assessments, as required pursuant to Article 5 hereof, when and as the same shall become due and payable, or if default shall be made in payment of any insurance premiums as required pursuant to Article 9 hereof, and if any such defaults shall continue for a period of ten (10) days after written notice thereof from Lessor to Lessee;

(c) xxx

(d) xxx

Then, and in any such event, Lessor at any time thereafter during the continuance of any such event of default, may give written notice stating that this Lease and the term hereby dismissed shall expire and terminate on the date specified in such notice. Upon the date specified in such notice, this Lease and the term hereby demised and all rights of Lessee under this lease, shall expire and terminate ...

The lease further provides that upon the expiration or termination of the lease, the Lessee will surrender the premises, that the Lessor may re-enter, and that the Lessor may repossess, by force, summary proceedings, ejectment or otherwise. Thus under the express terms of the lease, if the Lessee defaults on payment of the rent, or otherwise causes an event of default, the Landlord may give notice after ten (10) days from the default, that the lease has expired and terminated and the Lessee is bound by the terms of the lease to quit and surrender.

On October 14, 1983 Allan Clark was notified that the Landlord expected strict compliance with the terms of the written lease. After the Debtor's failure to pay rent on November 1, 1983, the Landlord on November 3, 1983 sent a notice declaring the default, demanding payment and advising the Debtor that unless payment is made within 10 days, the Trustees will take action under the lease. On November 15, 1983 the Landlord sent another notice declaring the default, advising the Debtor that the right of possession had expired under the lease terms and notified the Debtor that an eviction proceeding will be commenced.

■ There is no doubt, and this Court is satisfied, that the Landlord informed the Debtor of its obligation of strict compliance with the lease and then strictly followed the procedures set forth in the lease to declare the default, provide a cure period and finally, to declare the lease terminated upon the Debtor's failure to cure. While the Debtor contends that the procedure employed by the Landlord is contrary to the law of Florida, this Court is satisfied that as to the contract between the parties the Landlord followed the procedure set forth in the lease and properly terminated the lease. Whether the procedures followed by the Landlord are sufficient to satisfy the legal prerequisites for an eviction action is a matter which may be raised in the State court where the eviction action is currently pending.

Based on the foregoing, this Court is of the opinion that the lease was effectively terminated prepetition and therefore, nothing remains which can be assumed.

■ Even if the lease had not been terminated prepetition, this Court is satisfied that the Debtor has failed to establish any ability to meet the requirements of § 365(b)(1)(A), (B), and (C) in order to assume the lease. The Court heard extensive

testimony by experts for both the Debtor and the Landlord. Upon review of the record, this Court finds that the overwhelming weight of the evidence supports the conclusion that the Debtor operates substantially below the Westshore market area in both occupancy and average rates, that the room revenue has been in steady decline since January, 1982 and that the hotel, as it presently exists, is not a viable operation. In short, the Debtor failed to carry the burden to show an ability to cure defaults or provide adequate assurance of prompt cure, provide adequate assurance of future performance under the lease and compensate the Lessor for any pecuniary loss resulting from the defaults. Accordingly it is

ORDERED, ADJUDGED and DECREED that the Motion for Relief from Automatic Stay filed by Causeway Inn South, Inc. be and the same is hereby granted and the stay is lifted to permit the Landlord to proceed in a Court of competent jurisdiction.